Good morning, Vince Franco, Federal Defenders, on behalf of Mr. Valenzuela. The 16-level increase of Section 2L1.2 is like no other. It results in draconian sentences, in this case 100 months, for committing a nonviolent offense of just attempting to gain entry into the United States. Because neither the district court nor the sentencing... Well, it's attempting to gain entry into the United States with a prior felony conviction, counsel, right? Correct. That's what bumps up the 16-level. Yes, but it's because neither the district court nor the sentencing commission has ever explained why this drastic 16-level increase is appropriate and should be treated differently than for every other type of federal offense. That doesn't make any sense, counsel. In essence, we punish more severely the re-entry of an illegal alien  That's what the sentencing commission based the 16-level enhancement on, didn't it? To say that it's more serious is not to say that it warrants tripling of the base offense level for just someone that has come back with a prior record. Prior record in every other federal offense generally, I think, except for one, is accounted for in Chapter 4. But it's Congress who initially made the determination, did it not, that we would punish more severely those illegal re-entrants who had come back after previously having been convicted and deported. Congress raised the statutory maximums, but they gave no directive to the sentencing commission to actually impose higher offense levels. And the statutory maximum for this particular offense is what? 20 years. It should be 20 years, and he got 100 months, which is less than half of what Congress authorized for the punishment. So what is your real argument here, counsel, that you're disagreeing with the congressional determination that we punish more severely this crime? That a sentence of less than half is constitutionally unreasonable? No one has explained why criminal history should be treated differently in this exact context. Congress made that determination, counsel. We don't have the right to second-guess the congressional determination that we punish a crime more severely, and the punishment is up to 20 years. Congress sets statutory maximums, but district courts impose sentences, and the guideline commission makes out guidelines. What the commission is supposed to do. So is your attack essentially on the substantive unreasonableness of a less than half the congressionally authorized maximum sentence? Is that what this case boils down to? It's twofold, substantive and procedurally. A district court is still required to apply all the 3553A factors. And recidivism, and as the guidelines put out, recidivism is taken into account in Chapter 4. Nothing explains why, other than Congress has allowed it, why looking at each individual that a certain prior conviction authorizes a random, so to speak, number of 16 levels, when originally the guideline commission, when they came out with this guideline, they felt based on their empirical study that the base offense level should be 6. The sentencing commission... Recidivism is obviously a significant factor in the district court's sentence here, is it not? It factors into it, yes. And your client has a fairly significant, not only rap sheet criminal history record, but he also has a history of violent assaults and disrespecting staff and so on while he's incarcerated. And the court considered that, did it not, in fashioning the sentence? But it never explained why the offense level of 24 was the starting point. Yes, it should have considered all these factors. But why, as a matter of policy, was... The offense level of 24 is set by the guideline competition, is it not? Yes. And what we're saying is... Do you want to get rid of the guidelines altogether? We want to, we want that, all we want in this case is when someone challenges this specific guideline, that the sentencing commission has never explained why the 16-level enhancement is appropriate. That a district court needs to explain why the level 16... You'd be making the same argument if it were a 12-level enhancement or if it were a 10-level enhancement? We wouldn't be making the same argument if the commission had actually, the sentencing commission had, like they have for most other guidelines, had gone through studies and said, well, this actually is commensurate with a just punishment. Or setting a higher offense level actually does deter people from coming back. But the sentencing commission has never, or Congress, has ever made these type of decision-making policies and stated its reasons why. Isn't it common sense? If you give someone a chance to, if someone's in this country and commits a felony and is said to go away and is sent out and comes back in, I don't... It's common sense to give some increase in punishment, just like it's common sense for any other type of offense. It's not common sense to treat deported aliens differently than any other type of person that's convicted of a crime. Is it common sense to say a robber who has a robbery in his past shouldn't get a much higher sentence, but someone that just comes in... He does get a higher sentence. Pardon me? He does get a higher sentence. Yes, but what I'm trying to say is the person that comes back into the illegal entry, while the robber gets a slight incremental punishment, the illegal entrant, based on the same record, their sentence triples, whereas the other person's sentence just goes up a small amount. That's what's not common sense. Is this an equal protection argument that we treat aliens differently than we treat just your run-of-the-mill U.S. citizen robber in punishment? Is that what you're urging? No. You seem to be arguing that this judgment by the sentencing commission, 16 levels, is arbitrary and capricious in some conditions. I'm saying because they've never explained it, you can't just accept the district court's non-explanation. What's the authority for this extra heightened obligation to explain a sentence that adopts a 16-level increase? It comes from Rita and Kimbrough. Where in Kimbrough does it say that there's an obligation to explain it? Kimbrough says we can take it into consideration, the difference between crack and powdered cocaine and the disparity, but it doesn't create an obligation to explain it. But what it does say is that there are some guidelines that are the result of the commission working outside of traditional role, meaning taking the empirical evidence. Those type of guidelines are basically are varsity guidelines. Let me suggest that the district judge here was unaware of her power to vary from a guideline? But that's one of the problems is the district court here didn't explain why it was accepting that a level 16 should be the starting point. We have never said that there has to be an explanation in addition to considering all of the arguments, taking them into account and explaining that they were not sufficient to warrant a lower sentence. The judge made a judgment. That's what she's supposed to do. I disagree. Party says that a within guideline sentence ordinarily needs little explanation unless a party challenged the guideline calculation itself is contrary to 3553A. And that's what we're arguing, that we argue that there's a policy matter, that this guideline does not factor into the 3553A factors. And that's why this district court owed more explanation. Counsel, before you sit down, would you try and explain to me your argument as to why the evidence was insufficient to support the conviction on his entry without the consent of the attorney general? I read your brief, and frankly, I don't understand the argument, Mr. Brokauer. Well, the argument is, and I'm sorry, I can't go too far outside of what's in the brief of explaining it. Well, just explain what you said in the brief because I read it and I don't get it. Essentially that lack of consent is an element of the offense. He has to apply for permission before he seeks to reenter, and that's the element of the offense. It's the failure to apply for the attorney general or the Secretary of Homeland Security's permission to reenter. What Gracetis Ulibarri says is that it's lack of permission, a conscious desire to enter without permission. And he never sought permission. There's no evidence that he sought permission here before he attempted, before he reentered. Well, what the argument is based on is fraudulent consent is consent. That's the part I don't understand. How can two opposites be the same thing? Because of the common interpretation of what constitutes consent. But the consent is first you have to ask for permission to reenter before you reenter. And if permission is granted, then you have consent. And the element here is he never asked. I see we're going to go in circles on this, so I'll submit it. Okay. Thank you. You have more than used your time. Thank you. May it please the Court. My name is Larry Spong representing the United States in this case. Whatever policy disagreements one might have with 2L1.2 and where a court might vary, this is not that case. This is a defendant with an extensive criminal history. There was an extensive discussion of that history, of this person's adjustment when he's in custody. The court considered all that and made a reasoned decision. Based on that, I believe this is a reasonable sentence and this Court should uphold it. Okay. Are there any other questions? Thank you. The case just argued. Submitted for decision. We'll hear the next case, which is United States v. Valdevinos-Mendez.
judges: Jarvey, Schroeder, Tallman